WALTER L. HILDEBRANT AND J. WESLEY HILDEBRANT, PARTNERS, TRADING AS THE HILL NEEDLE COMPANY, PLAINTIFFS-RESPONDENTS. v. ALFRED A. WRIGHT, A. STANLEY WRIGHT, BENJAMIN E. WRIGHT AND THE HILL NEEDLE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued May 7, 1924—Decided October 7, 1924—Filed October 24, 1924.

Unfair Competition—Conspiracy to Ruin Business—Plaintiff in Modeling Business on Plan of that of Defendants in Whose Employ One Had Been, Enraged Defendants that They Maliciously Set Out to Destroy the Plaintiffs' Business—Methods Employed Considered and Jury's Verdict for Plaintiffs Sustained.

On defendants' rule to show cause.

1002 NEW JERSEY MISCELLANEOUS REPORTS.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the plaintiffs-respondents, *Stamler, Stamler & Koestler.*

For the defendants-appellants, *William Greenfield.*

PER CURIAM.

The theory of the suit is that of *Van Horn* v. *Van Horn,* 52 N. J. L. 284; 56 *Id.* 318, viz., conspiracy to ruin plaintiffs' business, and acts. done in pursuance thereof. Defendants say the real sinner is Wesley Hildebrant, one of the plaintiffs, who they say stole their trade methods, so that what they did was in legitimate self-defense. Our examination of the case leads us to the conclusion that, although there was great provocation in the conduct of plaintiffs, it did not justify or legally excuse the admitted conduct of defendants.

The elder Wright was doing a mail-order business in selling needles under the name of J. A. Coates & Sons, Limited, office in Orange. He employed Wesley Hildebrant to audit and handle his books as a sort of outside assistant. Hildebrant came up from Elizabeth from time to time to do this, and, apparently, did it well, so that he was entrusted with keys, safe combinations, &c., and had general access to the papers of Wright. He soon discovered that it was a good business, and also that Wright was not operating at all in the State of Tennessee, and saw no reason why he should not take up that vacant territory. So he started a business from the Elizabeth end, which he called the Hill Needle Company, adopting and copying Wright's methods of correspondence, shipping, &c., and began to solicit mail orders from Tennessee. Wright soon found this out, and became furious at what he considered a betrayal of his affairs by one whom he had taken into his confidence. There is little, if anything, to be said for Hildebrant's conduct from a moral standpoint, but if there was no secret process (and there was not) the law would not prevent his competing with Wright, even on

his own ground, if he wanted to do so. But it is quite clear that Wright was determined to run him out of the business by fair means or foul. Each side registered a partnership name of Hill Needle Company on the same day, one in Union and one in Essex, both futile, because not executed according to the statute. Ten days later Hildebrant got his filed properly, and the next day Wright filed an incorporation in Essex under the same name. If this were all, the plaintiff would have little of a case; but there is much more. Wright wrote letters to Elizabeth banks claiming checks sent to Hildebrant, to the postmaster there, claiming letters addressed to Hill Needle Company circularized Hildebrant's customers and prospective customers in Tennessee offering reductions and refunds on Hildebrant's contracts; got back a lot of Hildebrant's needles and sent them to him in Elizabeth, and in every possible way sought to break down Hildebrant's business. Meanwhile, Wright kept up his own business in the Coates name. His Hill Needle Company business was a mere cover to make trouble for Hildebrant.

The judge was unusually mild in his charge and gave the defendants all they were entitled to, but he generally left it to the jury to say whether they had acted maliciously for the purpose of destroying plaintiff's business, and the jury found they had. This finding we are unwilling to disturb. Irrespective of the question of a pure conspiracy, the letters to the banks and the offers of rebates, both of which were false, amounted to libel, and were legally unwarranted.

Mr. Greenfield claims that the sons should not be mulcted with the father, as they were not active participants in his doings. Both seem to have been voluntary puppets of his, and they could not have been ignorant of his purposes in getting up the corporation and in sending out the letters, and in whatever else he did.

There was no error in refusing to nonsuit or direct a verdict, and the verdict was not against the weight of evidence. It is claimed that the damages are excessive. The verdict was $2,000, and when it is considered that the gist of the action is malice (*Van Horn* v. *Van Horn, supra*), and puni-

tive damages are, consequently, in order, it is difficult to say that it was excessive. As to the admission of testimony that plaintiffs paid $225 for a commercial agency book, this is not embraced in any reason filed.

The rule will be discharged.